UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY CANAS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS ACTION COMPLAINT** ) ) |
| TYME TECHNOLOGIES, INC., STEVE HOFFMAN, and BEN R. TAYLOR, | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) ) |

Plaintiff Henry Canas ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tyme Technologies, Inc. ("Tyme" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Tyme securities between

March 14, 2018 and January 18, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Tyme is a clinical-stage biotechnology company that develops novel cancer therapeutics.  The Company was founded in 2011 and is headquartered in New York, New York. Tyme is currently developing SM-88, a combination therapy based on dysfunctional metyrosine derivatives for metastatic pancreatic cancer and biomarker-recurrent prostate cancer.

3.      On March 14, 2018, Tyme announced that the U.S. Food and Drug Administration ("FDA") had accepted its Investigational New Drug ("IND") application to initiate the Company's Phase II clinical trial for SM-88 in pancreatic cancer (the "Phase II Study").

4.      On March 27, 2018, Tyme commenced a Phase II Study of SM-88, officially titled "A Phase II Multi-Center Study of SM-88 in Subjects With Pancreatic Cancer Whose Disease Has Progressed or Recurred After/on First Line Chemotherapy" (the "Phase II Study").

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) Tyme had not adequately designed the Phase II Study to present reliable results on the efficacy of SM-88 on pancreatic cancer; (ii) Tyme had failed to include an appropriate control group in its open-label Phase II clinical trial for SM-88; (iii) the omission of an appropriate control group distorted

the reliability of data showing the efficacy of SM-88 in the Phase II Study; and (iv) as a result, Tyme's public statements were materially false and misleading at all relevant times.

6.    On January 18, 2019, Tyme reported results from the Phase II Study.  Although Tyme characterized the results as positive, stating that SM-88 "improves survival," the trial did not include a control group, and Tyme's announcement merely compared survival data to historical controls. Market commentators were quick to highlight this glaring deficiency in the Phase II Study.

7.    On this news, Tyme's stock price fell $1.32 per share, or 35.39%, to close at $2.41 per share on January 18, 2019.

8.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

11.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Tyme is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

13.     Plaintiff, as set forth in the attached Certification, acquired Tyme securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Tyme is a Delaware corporation with principal executive offices located at 17 State Street, 7th Floor, New York, New York.  Tyme's common stock trades in an efficient market on the NASDAQ Stock Market ("NASDAQ") under the symbol "TYME".

15.     Defendant Steve Hoffman ("Hoffman") has served at all relevant times as the Chief Executive Officer ("CEO") of Tyme.

16.     Defendant Ben R. Taylor ("Taylor") has served at all relevant times as the President and Chief Financial Officer ("CFO") of Tyme.

17.     The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein collectively as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of Tyme's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with the Company, and their access to material information available to them but not to

4

the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.    Tyme is a clinical-stage biotechnology company that develops novel cancer therapeutics.  The Company was founded in 2011 and is headquartered in New York, New York.

20.    Tyme is currently developing SM-88, a combination therapy based on dysfunctional metyrosine derivatives for metastatic pancreatic cancer and biomarker-recurrent prostate cancer.

21.    On March 14, 2018, Tyme announced that the FDA had accepted its IND application to initiate the Phase II Study.

22.    On March 27, 2018, Tyme began the Phase II Study, officially titled "A Phase II Multi-Center Study of SM-88 in Subjects With Pancreatic Cancer Whose Disease Has Progressed or Recurred After/on First Line Chemotherapy."

### Materially False and Misleading Statements Issued During the Class Period

23.    The Class Period begins on March 14, 2018, when Tyme issued a press release announcing that the FDA had accepted its IND application to initiate the Phase II Study.  In the press release, Tyme's CEO, Defendant Hoffman, touted the Company's preparation for the Phase II Study, stating:

> The acceptance of this IND represents an important accomplishment for our SM-88 clinical development program and we hope to build upon the encouraging results previously observed in SM-88 treated pancreatic cancer patients . . . . **We**

> ***have been aggressively preparing for this trial and interest from well beyond the 35 planned sites for the trial.***

(Emphasis added). The press release was also attached as an exhibit to Tyme's Current Report on Form 8-K, which was signed by Tyme's CFO, Defendant Taylor, and filed with the SEC on the same day.

24.    On April 9, 2018, Tyme issued a press release in which Defendant Hoffman touted the Company's recent successes and stated that the Company was "fully focused" on meeting its clinical milestones:

> Tyme executed on multiple milestones in the fiscal fourth quarter, including major clinical, operational and financing events . . . . We had significant data presentations at two important oncology conferences, started a second large Phase II trial in pancreatic cancer and completed our first underwritten equity financing. ***We are now fully focused on successfully achieving multiple data milestones over the next 12 months*** and completing the transformation we began last year.

(Emphasis added).  The press release was also attached as an exhibit to Tyme's Current Report on Form 8-K, which was signed by Defendant Taylor and filed with the SEC on the same day.

25.    On June 12, 2018, Tyme issued a press release announcing "detailed patient data and analyses from both the First Human Study . . . and Compassionate Use Program of SM-88 in metastatic cancer patients."  In the press release, Defendant Hoffman emphasized that Tyme was "highly encouraged" by these earlier studies on the use of SM-88, and reiterated the Company's "focus" on current trials:

> ***We are highly encouraged by the data with SM-88 from these studies*** in terms of the apparent safety and efficacy shown by the drug, as well as the breadth of cancer indications for which responses were observed . . . . We remain focused on completing our current trials, and will look to expand SM-88 development into additional cancer settings in the future.

(Emphasis added.)  The press release was also attached as an exhibit to Tyme's Current Report on Form 8-K, which was signed by Defendant Taylor and filed with the SEC on the same day.

26.     The next day on June 13, 2018, Tyme filed its annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the fiscal year ended March 31, 2018 (the "Annual Report"). The Annual Report referenced the Phase II Study's dosage regimen, stating, in relevant part:

> SM-88 is an oral, combination therapy with our proprietary dysfunctional tyrosine derivative as the backbone. Tyrosine is a non-essential amino acid that has a high affinity for uptake by cancer cells, but has minimal uptake by healthy cells. The tyrosine derivative used in SM-88 is designed to interfere with processes of cancer cells requiring functional tyrosine, such as protein synthesis. The other active components of SM-88 are rapamycin, methoxsalen, and phenytoin, which are used to complement and augment the activity of the tyrosine derivative and ultimately cause apoptosis of the cancer cells, in part, as a result of oxidative stress. Each of these three non-tyrosine components have been FDA approved for other conditions and are each administered at doses that are approximately 25% or less than their recommended therapeutic dosing levels for their respective approved indications. ***These four components are being individually orally administered to patients according to a dosage regimen in our ongoing Phase II trials.*** We believe the effectiveness of our tyrosine derivative in effecting cancer cell death is enhanced by combining it with small doses of the aforementioned three repurposed agents, which we believe may increase the uptake of the tyrosine derivative and enhance oxidative stress on the tumor cells.

(Emphasis added). Notably, while these statements briefly referenced "a dosage regimen" for the Phase II Study, they wholly failed to mention the study's lack of a control group or reliance on historical controls.

27.     The Annual Report also contained merely generic, boilerplate representations regarding Tyme's lack of experience completing Phase II clinical trials or commercializing pharmaceutical products, stating, in relevant part:

> ***We have no history of completing large-scale, pivotal Phase II or III clinical trials or commercializing pharmaceutical products, which may make it difficult to evaluate the prospects for our future viability.***
>
> Our operations to date have been limited to financing and staffing our Company, developing our technology platform, SM-88 and other potential drug candidates, and initializing and conducting our small-scale completed Phase Ib clinical trial and the ongoing Phase II clinical trials for SM-88. We have not yet developed our

commercialization strategy and marketing plan. In additional, our executive team has no prior experience in obtaining regulatory approval for a drug or commercializing an approved drug. Accordingly, we have not had experience completing a large-scale or pivotal clinical trial (whether Phase II, III, or otherwise), obtaining marketing approval, manufacturing product on a commercial scale or conducting sales and marketing activities. Consequently, predictions about our future success or viability may not be as accurate as they could be if we had a history of successfully developing and commercializing pharmaceutical products.

(Emphasis in original.)

28.    The Annual Report also contained merely generic, boilerplate representations regarding Tyme's exposure to risks such as "interruptions or delays" and that "expected future revenue could be adversely affected," stating, in relevant part:

> We are conducting ***our first Phase II clinical trials*** and ***their successful completion is subject to numerous factors that can cause interruptions or delays, <u>many of which may be beyond our control</u>***. Should we experience any interruption or delay, ***our plans and expected future revenue could be adversely affected*** and could result in our inability to continue our operations.

(Emphasis added).  In particular, the Annual Report noted that "poor trial design" was one such factor among "many of which may be beyond [the Company's] control," without disclosing the failure to include a control group in the Phase II Study.

29.    Appended as exhibits to the Annual Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Hoffman and Taylor "each certif[ied] . . . that:  (a) The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C 78m or 78 *o* (d)); and (b) The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.     On July 30, 2018, Tyme issued a press release (the "July 30 Press Release") in which Defendant Hoffman touted the Company's exhaustive focus on and progress with its clinical programs, "most importantly" the Phase II Study, stating:

> During the first quarter of our fiscal 2019, *we have focused on advancing our key clinical programs, most importantly our Phase II pancreatic cancer trial* . . . . We are excited that this trial has built up momentum so quickly and *we remain on track to provide interim data on the first 36 patients in January 2019*. *We remain focused on executing on all the fronts to reach the important milestones* anticipated over the next six to twelve months.

(Emphasis added).

31.     The July 30 Press Release also contained information regarding key features of the Phase II Study:

**Pancreatic Cancer Phase II Program:**

- The Phase II trial's first clinical site opened on March 27th and the trial has since expanded to seventeen sites open for patient enrollment today. Eight of these sites have opened in the last 45 days.
  - Key centers recently opening include: Virginia Mason Medical Center, City of Hope, Washington University, Highlands Oncology Group, multiple US Oncology Network sites and the Sarcoma Oncology Research Center
  - Ten additional clinical trial sites are currently scheduled to open during August 2018.

- Ten patients have been randomized for treatment in the trial, five of whom were randomized during July.

- Fourteen additional patients have consented to participate in the trial and are being screened for admission. The average time from consent to randomization to date in the trial has been approximately two weeks.

- The Company continues to expect Stage 1, the dose ranging phase, to complete enrollment by the end of calendar year 2018 with 36 patients. The Company plans to share interim data from Stage 1 during a relevant medical meeting in January 2019.

While assuring investors of certain features of the Phase II Study, such as patients "randomized for treatment" and "dose ranging," the July 30 Press Release omitted the fact that the study

lacked a control group and relied on historical controls.  The July 30 Press Release was also attached as an exhibit to Tyme's Current Report on Form 8-K, which was signed by Defendant Taylor and filed with the SEC on the same day.

32.    On November 5, 2018, Tyme issued a press release concerning clinical and corporate updates for the fiscal second quarter 2019.  The press release stated, in relevant part: "Tyme continues to focus on advancing SM-88's pancreatic cancer program, while also planning for expanding development into the numerous other indications where SM-88 has previously shown encouraging efficacy."  The press release was also attached as an exhibit to Tyme's Current Report on Form 8-K, which was signed by Defendant Taylor and filed with the SEC on the same day.

33.    On January 15, 2019, Tyme issued a press release announcing the scheduling of a conference call with investors to discuss the Phase II Study's preliminary data, scheduled for January 2018.  In the "About SM-88" section of the press release, Tyme touted the efficacy of the drug:

> SM-88 is a novel combination therapy that utilizes a proprietary dysfunctional tyrosine derivative to interrupt the metabolic processes of cancer cells, breaking down the cells' key defenses and making them vulnerable to oxidative stress and death. ***SM-88 has demonstrated efficacy in the treatment of multiple oncology indications, including*** breast and prostate, and ***pancreatic cancer***, without low reported toxicities or serious adverse events.

(Emphasis added).  The press release was also attached as an exhibit to Tyme's Current Report on Form 8-K, which was signed by Defendant Taylor and filed with the SEC on the same day.

34.    The statements referenced in ¶¶ 23-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:

(i) Tyme had not adequately designed the Phase II Study to present reliable results on the efficacy of SM-88 on pancreatic cancer; (ii) Tyme had failed to include an appropriate control group in its open-label Phase II clinical trial for SM-88; (iii) the omission of an appropriate control group distorted the reliability of data showing the efficacy of SM-88 in the Phase II Study; and (iv) as a result, Tyme's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

35.    On January 18, 2019, Tyme reported results from the Phase II study. Although Tyme characterized the results as positive, stating that SM-88 "improves survival," the trial did not include a control group, and Tyme's announcement merely compared survival data to historical controls.

36.    Analysts were quick to notice the Company's glaring design failure in the Phase II study when the Company disclosed its results. For example, that same day, *The Motley Fool* published an article titled "Here's Why Tyme Technologies Fell 35% On Friday." The article linked the drop explicitly to the revelation that Tyme had failed to include a control group in the Phase II Study, stating, in relevant part:

> The headline of the press release sounds great, noting that the drug "improves survival" -- but there wasn't a control group in this midstage trial. All the patients got the drug, and Tyme is just comparing the survival data to historical controls.
>
> Specifically, the company notes that 79% of the 14 third-line patients in the trial -- those who had failed two prior therapies -- were alive after a median follow-up of 4.7 months, which is more than double the two-month median survival based on a retrospective analysis of third-line patients in 19 historical trials.
>
> ***The problem with historical controls is that it's really hard to know if the 14 patients have the same characteristics as the patients who were in the previous clinical trials. And even if the patients were fairly similar, the history of best standard of care has generally improved over time, so historical controls have typically gotten better for most types of cancer.***

11

(Emphasis added).

37.     *The Motley Fool* article went on to explain in detail how Tyme's use of historical

controls over a control group in the Phase II Study had provided a misleading picture as to the

efficacy of SM-88 on pancreatic cancer:

> The company notes that eight of the 17 evaluable patients -- which includes some
> second-line and fourth-line or later patients -- had "stable disease or better." But
> when you go to the slides of the presentation for more details, it shows that ***only
> two of those patients had an actual response at their target lesion (and a partial
> response at that)***. The other six had stable disease. And the definition of stable
> disease is actually pretty broad -- ***three of the six had tumors that grew after two
> months***.

(Emphasis added).

38.     The article also questioned Tyme's presentation on its website of the Phase II

Study's data which included incorrect data concerning the study:

> To make matters worse, ***the poster on the company's website initially had the
> wrong graph of responses that included extra patients***. Tyme said in an SEC
> statement that the company changed the figure because it included scans of
> patients who weren't at two months. It appears to be an honest mistake, but
> ***investors may be questioning whether there's more to it than that.***

(Emphasis added).

39.     On this news, Tyme's stock price fell $1.32 per share, or 35.39%, to close at

$2.41 per share on January 18, 2019.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous

decline in the market value of the Company's securities, Plaintiff and other Class members have

suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired Tyme securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tyme securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tyme or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tyme;

- whether the Individual Defendants caused Tyme to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tyme securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tyme  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Tyme securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50.    Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

51.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tyme securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tyme securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tyme securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tyme's finances and business prospects.

54.    By virtue of their positions at Tyme, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Tyme, the Individual Defendants had knowledge of the details of Tyme's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Tyme.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tyme's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tyme securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Tyme's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tyme securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Tyme securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tyme securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise

acquired said securities, or would not have purchased or otherwise acquired them at the inflated

prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class,

the true value of Tyme securities was substantially lower than the prices paid by Plaintiff and the

other members of the Class.  The market price of Tyme securities declined sharply upon public

disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly,

directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5

promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing

public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60.     Plaintiff repeats and reallege each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation

and management of Tyme, and conducted and participated, directly and indirectly, in the conduct

of Tyme's business affairs.  Because of their senior positions, they knew the adverse non-public

information about Tyme's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual

Defendants had a duty to disseminate accurate and truthful information with respect to Tyme's

financial condition and results of operations, and to correct promptly any public statements issued by Tyme which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tyme disseminated in the marketplace during the Class Period concerning Tyme's results of operations.    Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tyme to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of Tyme within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tyme securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Tyme.  By reason of their senior management positions and/or being directors of Tyme, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tyme to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Tyme and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tyme.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 28, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com
Email: jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Counsel for Plaintiff*

**Submission Date**

2019-01-24 11:25:39

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Tyme Technologies, Inc. ("Tyme" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Tyme securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Tyme securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Tyme securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Henry Canas

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
| --- | --- | --- |
| 01/16/2019 | 800 | 3.62 |

## Sales

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|---|---|---|
| none | | |

## Documents & Message

**Upload your brokerage statements showing your individual purchase and sale orders.**

(redacted)

**Signature**



**Full Name**

Henry Canas

(redacted)

**Tyme Technologies, Inc. (TYME)**                                    **Canas, Henry**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 1/16/2019 | Purchase | 800 | $3.6200 |